United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUFUS BIDAD, et al.,

Plaintiffs,

v.

CITY OF SANTA ROSA, et al.,

Defendants.

Case No. 26-cv-11780-HSG

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 5

Before the Court is an Ex Parte Application for a Temporary Restraining Order ("TRO") seeking preliminary injunctive relief readmitting Plaintiffs to Sam Jones Hall ("Shelter") and issuing a preemptory writ for Plaintiffs to inspect the Shelter's records.[1] ("Mot."), Dkt. No 5 at 18. For the reasons explained below, the Court **DENIES** the request for a TRO.

## I. BACKGROUND

Plaintiffs are former residents of the Shelter operated by the Catholic Charities of Northwest California ("CCNWC"), who were evicted from the Shelter after being found to have been involved in two violent incidents on October 7 and 8, 2026 that violated the Shelter's policies. Dkt. No. 11 at 6-8. Plaintiffs are now homeless and participating in an appeals process through CCNWC to regain their residency in the Shelter. Mot. at 3.

The day this case and the Motion were reassigned to the undersigned, the Court issued an order directing Plaintiff to serve Defendants via email with the Complaint, Plaintiff's TRO Motion and supportive documents, and the Court's Order declining to rule on the TRO without notice to

[1] Plaintiffs do not specify in their TRO which organization they are seeking a preliminary injunction against. The Court assumes, based on their pleadings, that Plaintiffs are seeking an injunction against both the City of Santa Rosa and the Catholic Charities of Northwest California.

Defendants[2] and an opportunity for them to be heard under Federal Rule of Civil Procedure 65(b)(1). Dkt. No. 8 at 1. Defendants City of Santa Rosa ("City") and CCNWC filed separate oppositions, and individual defendants did not. Dkt. Nos. 10, 11. Plaintiff filed a Reply on October 19, 2026. The matter was deemed submitted pursuant to Local Rule 7-1(b).

## II. LEGAL STANDARD

Injunctive relief is a matter of equitable discretion and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24, 32 (2008) (citation omitted); Fed. R. Civ. P. 65. The standard for issuing a temporary restraining order is "substantially identical" to the rule for granting a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). A "TRO should be restricted to preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (internal quotations omitted) (cleaned up).

A mandatory injunction is "doubly demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Issuing a mandatory preliminary injunction requires "more than a possible or fairly debatable claim." *Id.* at 744. Instead, it requires a showing that the law "clearly favor[s]" the party requesting the mandatory injunction. *Stanley v. Univ. of S. California,* 13 F.3d 1313, 1320 (9th Cir. 1994).

Temporary restraining orders may only issue where the moving party has clearly shown: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20, 22 (citations omitted). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quotation omitted). "If a plaintiff can only

---

[2] Defendants listed on Plaintiffs' Complaint are: SASHA BROWN, CATHOLIC CHARITIES OF NORTHWEST CALIFORNIA, CITY OF SANTA ROSA, JENNIELYNN HOLMES, KELLI KUYKENDALL, and MATTHEW VERSCHEURE. ("Compl."), Dkt. No. 1 ¶¶ 14-19.

show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotations omitted) (cleaned up). Under the Ninth Circuit's sliding scale approach, a plaintiff may alternatively establish that there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the plaintiff," and the other two *Winter* factors are satisfied. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

## III. DISCUSSION

In seeking a TRO, Plaintiffs carry a heavy burden to show a clear likelihood of success on the merits or demonstrate that they will experience irreparable harm if the TRO is not granted. As a threshold matter, given the nature of the mandatory injunction sought here, Plaintiffs must first demonstrate that CCNWC is an arm of the state.[3]

Plaintiffs want to be readmitted to the Shelter, which they state is operated by CCNWC. Mot. at 2-3. Plaintiffs allege that the City directly controls CCNWC, and therefore also controls the Shelter. Mot. at 4. To demonstrate the City's control of CCNWC, Plaintiffs cite CCNWC's Funding Agreement and Operating Agreement ("Agreements") with the City as proof that the City operates the Shelter and exercises "coercive power" over CCNWC. Mot. at 4-7; Powelson Decl. ¶ A; Mot. Ex. 1. But a private institution's receipt of public funds or the fact that "a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841-842 (1982). Next, Plaintiffs argue that CCNWC's communications with the City constitute Joint Action. Mot. at 4-7. Plaintiffs cite emails exchanged between City officials discussing homelessness in the City, some of which include employees of CCNWC. Mot. Ex. 4. The existence of correspondence between the City and CCNWC does not demonstrate that the City has "so far insinuated itself into a position of interdependence with" CCNWC "that it

[3] The Court declines to consider the likelihood of success on the merits of Plaintiffs' state law claim, as the Court would exercise its discretion to decline supplemental jurisdiction over that claim absent a viable federal claim.

must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725 (1961). The existence of the Agreements and communications between CCNWC and the City is not enough to transform CCNWC into a state actor. Therefore, Plaintiffs have not shown a likelihood of succeeding on their claim that CCNWC is a state actor, which means their Fourteenth Amendment claims are likely to fail.[4]

Title II of the Americans with Disabilities Act ("ADA") states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege that: (1) they are an individual with a disability, (2) they are otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities, (3) they were either excluded from participation in or denied the benefits of the public entity's services, and (4) such exclusion, denial, or discrimination was by reason of their disability. *Daniel v. Levin*, 172 Fed. App'x 147, 149 (9th Cir. 2006). Plaintiffs do not allege that CCNWC discriminated against them because of their disabilities. Instead, Plaintiffs argue that CCNWC should create new accommodations for Plaintiffs that "modify" CCNWC's appeal process. Mot. at 13-14. Title II does not require CCNWC to "make modifications that would fundamentally alter existing programs and services administered pursuant to policies that do not facially discriminate against the disabled." *Townsend v. Quasim,* 328 F.3d 511, 518 (9th Cir. 2003). And Plaintiffs do not argue that CCNWC's appeals process facially discriminates against them because of their disabilities. Plaintiffs' ADA claim is thus unlikely to succeed and cannot be the basis for the requested mandatory injunction.

Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with physical or mental impairments that substantially limit major life activities in any program or

---

[4] The Court construes Plaintiffs' request for an injunction as being against both CCNWC and the City. Dkt. No. 5. However, the City confirms that CCNWC is responsible for the operation of the Shelter. Dkt. No. 10-2 ¶¶ 3-4. Therefore, because the City does not operate the Shelter, Plaintiffs have not shown that the City likely has the ability to execute an injunction to admit Plaintiffs to the Shelter. *Id.*

United States District Court
Northern District of California

activity receiving federal financial assistance. 29 U.S.C. § 794. The Ninth Circuit has long recognized a private cause of action under § 504. *See Kling v. County of Los Angeles*, 633 F.2d 876, 878 (9th Cir. Cal. 1980). To bring a claim under § 504, Plaintiffs must show (1) they have a disability; (2) they are otherwise qualified to receive the benefit; (3) they were denied the benefits of the program solely because of their disability; and (4) the program receives federal financial assistance. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001); *Wong v. Regents of Univ. of California*, 192 F.3d 807, 816 (9th Cir. 1999), *as amended* (Nov. 19, 1999). Plaintiffs claim they need accommodation for their disabilities during the appeal process, which includes being readmitted to the Shelter. Mot. at 13-14. Plaintiffs provide no evidence that they have been denied benefits or accommodation because of their disabilities or otherwise have been discriminated against on account of their disabilities. Defendants contend, with evidentiary support, that Plaintiffs were removed from the Shelter because they posed a safety hazard to other residents. Dkt. No. 11 at 8. Plaintiffs again thus fail to meet their high burden of showing a likelihood of success on their disability discrimination claim so as to be entitled to the requested mandatory injunction.

Lastly, Plaintiffs claim they were evicted as retaliation in violation of their First Amendment rights. Mot. at 14-15. To prevail on a First Amendment Retaliation claim, Plaintiffs must show a "causal connection between a defendant's retaliatory animus and subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Plaintiffs believe they were evicted because of their continued association with Merlin Davis, whose property is across the street from the Shelter. Mot. at 2. This claim is contested by CCNWC, which responds that the Plaintiffs were removed from the Shelter for "egregious behavior," "posturing," physical or sexual assault," and "discriminatory behavior or discriminatory speech." Dkt. No. 11 at 8. While the parties dispute the exact circumstances, Plaintiffs admit that they were involved in an incident with another resident on October 7, 2026. Bidad Decl. ¶ H; Baca Decl. at 1; Lopez Decl. ¶ H.[5] Plaintiffs thus

---

[5] Plaintiffs present conflicting accounts of when the alleged incident took place. Plaintiffs Bidad and Lopez state that the attack took place on October 7, 2026, while the declaration in Plaintiffs' Motion of an unknown individual named Adreian Baca states that he witnessed another Shelter resident attack Bidad on October 8, 2026.

have not shown a likelihood of success as to their First Amendment retaliation claim, because they present no evidence suggesting any causal connection between their association with Merlin Davis and the incident they admit occurred on October 7, 2026.

Because Plaintiffs fail to show a likelihood of success on the merits, the Court does not need to reach the irreparable harm factor.[6] *See Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 944 (9th Cir.2013); *DISH Network Corp. v. F.C.C.,* 653 F.3d 771, 776–77 (9th Cir.2011).

## IV. CONCLUSION

Because Plaintiffs have not shown a likelihood of success on the merits or serious questions going to the merits, they are not entitled to the extraordinary relief of a temporary restraining order imposing a mandatory injunction. The Court accordingly **DENIES** the Application.

**IT IS SO ORDERED.**

Dated: October 22, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge



[6] The Court also finds that Plaintiffs have not raised serious questions going to the merits in light of the analysis above. And even if they had, they have not shown that the balance of hardships tips sharply in their favor. Defendants persuasively explain (and support with evidence) their position that Plaintiffs were directed to leave the Shelter because of an altercation that violated its rules and put other residents at risk. Additionally, because Plaintiffs' appeal is ongoing, one of the residents already has been invited back to the Shelter, all of the Plaintiffs are eligible to receive continued support from the Caritas Drop-In Center and receive shelter and housing resources from the Catholic Charities' Homeless Outreach Street Team, and they may all return to the Shelter on November 7, 2026, Dkt. Nos. 10-1 at 2; 11 at 4-5. However this dispute ultimately ends up being resolved, the Court cannot say that the balance of hardships tips sharply in Plaintiffs' favor so as to warrant the extraordinary remedy of an immediate mandatory injunction.